Nash, J.
 

 In 1835, William Gibson, James Gibson, Hugh Gibson and John Gibson, executed to their father, Joseph Gibson, a written obligation, in the penalty of five-hundred dollars each. The condition set forth that the parties are “the sons and heirs of Joseph Gibson,” and having received and expecting to receive, titles to the whole of the land of said Joseph, bind themselves to discharge all the debts of their father, then due or to be af-terwards contracted, and to maintain him during his nat* ural life, and to bury him decently» In 1841, John Gib*
 
 *328
 
 son conveyed to his brother James, the lessor of the plaintiff and who was one of the parties to the contract of 1825, the tract of land in dispute, subject to the following condition and proviso : “The condition of the above obligation is such, that, whereas the said John Gibson is bound by bond, in the sum of'five hundred dollars dated the 23th of April 1825, together wdth William Gibson, James Gibson and Hugh Gibson, in a like sum for the support of Joseph Gibson, their father, during his life time. Now, therefore, the condition of this deed is, that the said James Gibson shall well and7truly do and perform the covenants and contracts contained in the said bond, by maintaining and supporting the said Joseph during his life, and by burying him in a decent manner, &c., and also, that the said James shall out of the proceeds, &c , pay certain debts therein enumerated.” The deed then provides, but it is understood and agreed, “ that the support and main-tainance of my father is to have the preference of all other of these claims. After this is performed, the d'ebts of these other creditors are to be paid by the sale of said land, in such manner as will make the said land bring tho most money. The manner of executing the deed, as to the support of my father, is left to his, said John’s, option and discretion. The surplus, after the above trusts are performed, is subject to my order.” At the time the deed of trust was executed, John Gibson, the grantor, was indebted, was sued and judgment obtained, and a
 
 fi.fa.
 
 issued, and was levied on the land in dispute, and, at the sale, the defendant became the purchaser, and this action is brought by the trustee to recover the possession. His Honor, the presiding Judge, ruled that the deed of trust, upon its face, was fraudulent and void, as against then existing creditors of John Gibson, and that, there, fore, the plaintiff could not recover in this action. The plaintiff then submitted to a non-suit and appealed.
 

 
 *329
 
 We are not informed upon what provision in the deed, his Honor’s opinion rested. It is necessary, therefore, to examine it in all its parts. Does the first provision for the support of Joseph Gibson, the father, make it so?— John Gibson was indebted r.o his father in the sum of five hundred dollars for his maintainance — his father was, therefore, a creditor,-and it was as much the intention of the deed of John in conveying his land, to secure that debt as any other — nor does the fact of his giving that debt the preference over the other debts, and postponing them until its discharge, render the deed, in law, fraudulent.— So far the deed of trust presents the ordinary case of a debtor making an assignment of property for the payment of his debts, and classifying the claims or designating the order in which they are to be paid : This is not illegal.
 
 Moore
 
 v.
 
 Collins,
 
 3d Dev. 126.
 
 Hafner
 
 v.
 
 Irwin,
 
 1st Ire. 490. The debt to the father existed from 1825, and is, by the maker of the trust, placed in the first class. Does the fact, that the debt to the father is prospective as well as immediate, make it illegal to give it the preference
 
 l
 
 Surely not. A man may secure a future or contingent debt as well as a present one. Take this case ; a man, considerably in debt, procures a note to be discounted in Bank with a view to pay his creditors ; in order to procure sureties, he is required to mortgage real estate to secure .them: now whether he will ever pay that debt or his sureties be called on to pay it is contingent, and depends upon the fact of his failure to pay the necessary instalments. This contingenc}', however, cannot make the security void in law. But, again, a man, who owes debts, purchases a tract of land, aud gives to the vendor a lien upon it for the purchase money, either by mortgage or trust — this does not make the latter void in law. The maker of the trust or mortgagor does nothing, the law condemns. This feature in the deed of trust did not make it, in law, fraudulent.
 
 Cannon
 
 v.
 
 *330
 

 Peebles,
 
 2d Ire. 449. Our attention in the argurpent was drawn to the last clause, but one, in the deed of trust, “to-wit,” the
 
 manner
 
 of executing the deed, as to the support 'of my father, is left “to his, said John’s, option and discretion.” This reserves to John no control whatever over the fund conveyed, but only the manner in which the father shall be supported. Several persons were so bound» and the maker of the trust intended not to leave that to :the arbitary control of the trustee, but, as to the manner of the support, to reserve it, to be arranged between him and his brothers, as that he should board with the one or the other, and
 
 that his
 
 contribution should be in money or specific articles. It is true, that when the maker of a deed of trust to secure his creditors, reserves to himself the power of revoking it, and declaring other trusts, whereby an interest or benefit may accrue to himself, the conveyance is fraudulent and void ; but this is not such a case. The last clause is, “the surplus after paying all. 'the debts is to be returned to the maker.” This provision is only putting in words what Equity would declare “to wit,” a resulting trust for the maker after the debts are all paid. The deed of trust is not, upon its face, fraudulent — but it was a proper matter of enquiry for the jury to say, whether it was the intention of the maker of it to defraud his creditors or. any creditor, in the collection of these debts, contrary to the provisions of the Act of the General Assembly.
 

 Per Curiam. Judgment reversed and
 
 venire de novo,